**James O'BRIEN, et al., on behalf of himself and all others similarly situated, Plaintiffs,**

**v.**

**NATIONAL PROPERTY ANALYSTS PARTNERS, et al., Defendants.**

**No. 88 Civ. 4153 (PKL).**

United States District Court, S.D. New York.

June 15, 1990.

Goldberg Weprin & Ustin, New York City, for plaintiffs Estate of Jerome Moskowitz, Kenneth Moskowitz, Robert Lifton and Abraham Portnoy; Jack Weprin, Andrew W. Albstein, Michael J. Marino, of counsel.

Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., Sullivan & Damen, White Plains, N.Y., for defendant National Property Analysts Partners; Harold E. Kohn, Joseph C. Kohn, George W. Croner, Philadelphia, Pa., Amy K. Damen, White Plains, N.Y., of counsel.

## ORDER AND OPINION

LEISURE, District Judge:

Plaintiff class filed a complaint alleging violations of the federal securities laws, the Racketeer Influenced and Corrupt Organizations Act, and state law in connection with the offering and sale of shares in limited partnerships involved in the development of shopping malls. On July 27, 1989, the Court approved a settlement of the class action, and set August 10, 1989 as the final date for members of the plaintiff class to opt out of the class for settlement purposes. Four members of the plaintiff class (the "movants"), who did not opt out of the class prior to August 10, 1989, have filed a motion pursuant to Fed.R.Civ.P. 60(b) to extend the period to opt out; to modify the settlement order excepting movants from the release provisions contained

therein; to vacate the settlement order; and to exclude movants from the plaintiff class. Defendant National Property Analysts Partners ("NPA") has opposed movants' motion.

## FACTUAL BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of the case. Only those facts relevant to the disposition of the pending motion will be set forth. In brief, four members of the plaintiff class—the Estate of Jerome Moskowitz, as successor in interest to the deceased Jerome Moskowitz, Kenneth Moskowitz, Robert Lifton, and Abraham Portnoy—argue that the class settlement order should be vacated, or, in the alternative, that they should be allowed to opt out of the plaintiff class, due to state court lawsuits brought against them by defendant NPA. Movants claim that the notice of class action settlement was defective in that it did not inform the plaintiff class of the potential for lawsuits brought against them by NPA, and the effects of certain release provisions of the settlement agreement on plaintiffs' ability to defend those lawsuits.

Movants purchased limited partnership interests in NPA-sponsored limited partnerships involved in the development of three shopping malls. Upon purchase of these limited partnership interests, each movant executed a Negotiable Promissory Installment Note (the "Note") obligating him to make quarterly payments for a period of years in order to purchase fully his interest. The Notes clearly set out the schedule of payments due, starting in January 1984 and extending on a quarterly basis until October 1989.

Early in 1986, movants Jerome Moskowitz and Kenneth Moskowitz became dissatisfied with the operation of the limited partnerships, specifically with respect to the denial by the Internal Revenue Service of tax benefits which had been heralded by the offering memoranda issued by NPA. Affidavit of Hal Martin, sworn to on March 14, 1990, ¶ 5 ("Martin Aff."); [1] Affidavit of

1. Hal Martin is an accountant at Avon Electrical Supplies, Inc., of which Jerome Moskowitz was

Kenneth Moskowitz, sworn to on March 14, 1990, ¶ 2 ("Moskowitz Aff."). After unsuccessful attempts to receive an explanation from NPA as to the apparent failure of the limited partnerships in this regard, Jerome and Kenneth Moskowitz withheld payments due on their Notes during the last three quarters of 1987. Martin Aff., ¶ 6; Moskowitz Aff., ¶¶ 4–5. After further discussions with Howard Levy, vice president of NPA, Jerome and Kenneth Moskowitz made 50% payments on their notes throughout 1988. Martin Aff., ¶ 7; Moskowitz Aff., ¶ 6. Neither Jerome nor Kenneth Moskowitz made any payments after January 1989, at which time the lawsuit against NPA had been commenced. Martin Aff., ¶ 8; Moskowitz Aff., ¶ 7. Jerome Moskowitz is currently $455,676.50 in arrears on his Note; Kenneth Moskowitz is $208,343.50 in arrears. See Ex. 1 to Affidavit of Howard M. Levy, sworn to on April 4, 1990, ¶ 2.

The vice president of NPA asserts that "NPA never waived any payments due on the Investor Notes executed by Jerome or Kenneth Moskowitz." Levy Aff., ¶ 5. By letter dated January 7, 1988, NPA informed Jerome Moskowitz that while NPA agreed to the 50% payments during 1988, all payments on the Notes executed by both Jerome and Kenneth Moskowitz would be eventually due. See Ex. 2 to Levy Aff. The deferred payment schedules "were made [by NPA] solely in an effort to accommodate financial difficulties encountered by Jerome and Kenneth Moskowitz." Levy Aff., ¶ 5.

Similarly, movants Robert Lifton and Kenneth Portnoy discontinued payments on their Notes during 1989. Lifton is currently $47,510 in arrears on his Notes, while Portnoy is $38,008 in arrears. See Ex. 1 to Levy Aff. Lifton asserts that he stopped making payments on his Notes when "[i]t ha[d] become clear that the offering memorandum was inaccurate, and miscolored the prospects for success." Affidavit of Robert Lifton, sworn to on March 14, 1990, ¶ 4.

On June 15, 1988, the initial complaint was filed in this case. On June 8, 1989, the Court conditionally certified a plaintiff class consisting of all persons who had purchased or acquired interests in NPA-sponsored limited partnerships between 1975 and 1989. As a settlement of the class action was at that time partially consummated, the Court directed by order dated June 8, 1989 that the class be given notice of the proposed settlement agreement, and that a summary notice be published in a national newspaper pursuant to Fed.R.Civ.P. 23. During the last week of June 1989, a Notice of Class Action Determination, Proposed Partial Settlement and Hearing (the "Notice" or "Notice of Settlement") was mailed to all members of the plaintiff class, and summary notice was published in the *Wall Street Journal* on July 14, 1989.

The focus of the instant motion is the adequacy of the Notice in instructing class members of the full effects of the class action settlement. In brief, movants argue that the Notice was fatally deficient in that it did not advise the plaintiff class that those class members who had not completed full payment on their Notes might continue to be liable for those payments. Furthermore, movants claim that the release terms of the settlement agreement were unfair and misleading, in that they may prevent movants and those similarly situated from raising certain defenses to actions brought against them for collection of the Notes. Movants allege that they were intentionally deceived by NPA into believing that the class action settlement would settle all outstanding disagreements between the parties, including the amounts due on the Notes.

Section VI of the Notice, entitled "Release and Assignment of Claims and Termination of the Litigation," described the effects of the settlement on the claims asserted by the plaintiff class. More specifically, paragraph A reads:

president and Kenneth Moskowitz vice president. Martin oversaw the investments of both Jerome and Kenneth Moskowitz in the NPA-sponsored limited partnerships. Martin Aff., ¶ 1.

If the proposed settlement is finally approved by the District Court, the litigation, the Complaint, and each and every claim set forth therein, and all claims that might have been asserted therein, shall be dismissed on the merits and with prejudice as to the Settling Defendants. Moreover, the Plaintiffs and all Settlement Class Members, shall be fully and forever barred and enjoined from instituting or prosecuting, either directly or indirectly against, any and all individual class claims, allegations, actions, causes of actions or rights, whether known or unknown, against the Settling Defendants, and all individual or class claims, allegations, actions, causes of action or rights, whether known or unknown, against any insurer or reinsurer of any Settling Defendant.

The Notice does not contain any provisions concerning the effects of the settlement agreement on claims brought by NPA against members of the plaintiff class, based on the Notes or otherwise. There is no language which states or implies that all claims brought by any party concerning the underlying transactions are forever barred.

The Notice advises the plaintiff class of the hearing held before the Court on July 27, 1989, and that requests for exclusion from the class must be postmarked on or before July 24, 1989. The Notice states that it is a "summary" of the proposed settlement, and that a copy of the full settlement agreement may be examined at the Office of the Clerk of the Court of the Southern District of New York. None of the movants requested exclusion from the class by mail as provided for in the Notice or appeared at the hearing held before the Court on July 27. At the hearing held before the Court, the time for plaintiff class members to opt out of the class was extended to August 10, 1989. No additional notice of this extension was mailed to the plaintiff class or published in a newspaper or journal.

NPA filed complaints dated July 17, 1989 in New York State Supreme Court in Manhattan against Jerome and Kenneth Moskowitz for payment of all amounts due on their Notes. The date of service of the summons and complaints is disputed by the parties. The accountant for Jerome and Kenneth Moskowitz states that the complaints were mailed "[o]n or about ... July 27, 1989." Martin Aff., ¶ 4. Affidavits of service, however, indicate that service of the summons and complaints against Jerome and Kenneth Moskowitz took place at their place of business on July 20, 1989. Affidavits of Ralph L. Addonizio, sworn to on July 25, 1989, annexed as Ex. A to Affidavit of Elliot Schnapp, Esq., sworn to on April 3, 1990 ("Schnapp Aff.");[2] *see also* Schnapp Aff., ¶¶ 4-6. In an affidavit filed in reply to NPA's submissions, Kenneth Moskowitz claims that he never received a copy of the complaint served at his place of business on July 20, and first received a copy of the complaint through the mail "at the end of July, early August, 1989." Reply Affidavit of Kenneth Moskowitz, sworn to on April 10, 1990, ¶ 2.

NPA does not contest the fact that movants Robert Lifton and Abraham Portnoy were not apprised of the state court lawsuits against them until after the period to opt out of the plaintiff class had expired. The complaint filed against Robert Lifton is dated September 15, 1989, and the complaint against Abraham Portnoy is dated October 17, 1989.

Movants contend that had they known of the impending lawsuits against them for collection of their arrearages on the Notes, they would have opted out of the plaintiff class. Martin Aff., ¶ 16; Moskowitz Aff., ¶ 12; Lifton Aff., ¶ 6. The accountant for Jerome and Kenneth Moskowitz asserts that "[t]he Notice clearly did not apprise class members who were about to be sued that they would have no defense or relief against such law suits (for admittedly almost $2,000,000.00), when in fact such defenses existed before the settlement." Martin Aff., ¶ 15.

---

**2.** Elliot Schnapp is counsel to NPA in the state court actions commenced against movants.

Schnapp Aff., ¶ 1.

## DISCUSSION

### A. Standard under Fed.R.Civ.P. 60(b)

Federal Rule of Civil Procedure 60(b) provides that a district court may grant relief from a judgment or order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ..., misrepresentation, or other conduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied ...; (6) any other reason justifying relief from the operation of the judgment.

The motion is addressed to the discretion of the district court. *Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir.1986); Wright & Miller, *Federal Practice and Procedure*, § 2857, at 157–58. "In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality.... Generally, courts require that the evidence submitted in support of the motion to vacate a final judgment be 'highly convincing' ..., that a party show good cause for failure to act sooner ..., and that no undue hardship be imposed on other parties." *Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir.1987) (citations omitted).

Although movants do not frame their arguments with reference to specific subdivisions of Rule 60(b), the Court believes that subdivisions (4) and (6) are most relevant to movants' claims.[3] The Second Circuit has recently held that: "Rule 60(b)(4) of the Federal Rules of Civil Procedure provides that a court can relieve a party from a final judgment if the judgment is void, and this court has held that a judgment is void when the court ' "acted in a manner inconsistent with due process of

law." ' " *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 39 (2d Cir.1989) (*quoting Otte v. Manufacturers Hanover Commercial Corp.*, 596 F.2d 1092, 1099 (2d Cir.1979) (*quoting* Wright & Miller, *Federal Practice & Procedure*, § 2862, at 198)). In the Court's view, the central issue to be resolved is whether the Notice mailed to the plaintiff class comported with constitutional due process, and therefore whether the Court's validation of the Notice was constitutionally proper.

Rule 60(b)(6) allows the Court to grant relief from a judgment for any other justified reason which is not provided for by subdivisions (1) through (5). *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988); *Maduakolam v. Columbia University*, 866 F.2d 53, 55 (2d Cir.1989). Thus even if the Court finds that the Notice fulfilled the requirements of due process, the Court still retains the power to grant relief for movants if the circumstances on the whole are unduly unfair or oppressive. The extent of the Court's power under Rule 60(b)(6) has been variously described within this Circuit, but it is clear that courts will not act under the subdivision unless "extraordinary circumstances" are present. *See Nemaizer v. Baker, supra*, 793 F.2d at 63.

### B. Notice of Settlement and Due Process

The notice provisions of Fed.R.Civ.P. 23 are crucial to the maintenance of class actions, as they serve as the nexus between absent class members and the parties and counsel who adjudicate their rights. The text of Rule 23 does not set any content requirements with regard to notices advising the class of the terms of a proposed

---

**3.** Rule 60(b)(1) is ordinarily applied to alleviate harm caused parties by the mistake or excusable neglect of their counsel, such as in the context of motions to vacate default judgments. *See Nemaizer v. Baker, supra*, 793 F.2d at 62. Although subdivision (1) may certainly be applied to mistakes or neglect by the parties themselves, the Court does not view the instant motion as

concerning movants' mistaken failure to act, but rather the fundamental fairness of the Notice sent to the members of the plaintiff class. The Court does not believe that Rule 60(b)(3) is relevant to the motion, as, contrary to movants' assertions, the Court does not believe that the record establishes NPA's conscious intent to de-

settlement agreement.[4] Courts have held, however, that constitutional due process requires the contents of a notice of settlement to apprise fairly the absent class members of the subject matter and proposed terms of the settlement. *Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir.1975); *Milstein v. Werner,* 57 F.R.D. 515, 518 (S.D.N.Y.1972) (Pollack, J.) (*citing Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

"Although no rigid standards govern the contents of notice to class members, [*citing Mullane, supra,* 339 U.S. at 314, 70 S.Ct. at 657], the notice must ' "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." ' " *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983) (*quoting Grunin, supra,* 513 F.2d at 122 (*quoting Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp.,* 323 F.Supp. 364, 378 (E.D.Pa.1970), *aff'd sub nom. Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30 (3d Cir. 1971))); *see also National Super Spuds v. N.Y. Mercantile Exchange,* 660 F.2d 9, 21 (2d Cir.1981). The notice need only contain a "very general description of the proposed settlement, including a summary of the monetary or other benefits that the class would receive and an estimation of attorneys' fees and other expenses." *Grunin, supra,* 513 F.2d at 122; *see also Weinberger, supra,* 698 F.2d at 70. "Class members are not expected to rely upon the notices as a complete source of settlement information.... Any ambiguities regarding the substantive aspects of the settlement could be cleared up by obtaining a copy of the agreement as provided for in ... the notice." *Grunin, supra,* 513 F.2d at 122 (citations omitted); *see also Handschu v. Special Servs. Div.,* 787 F.2d 828, 833 (2d Cir.1986).

The Court interprets the relevant caselaw as requiring that a notice of settlement fairly and completely state the manner in which the class claims are being settled so that each class member will be able to make a reasoned decision either to remain in the class or to opt out. The notice of settlement does not have to contain all the operative details of the settlement agreement, but the notice must provide sufficient guidance as to the major terms and areas of agreement to allow class members to make further inquiry, either by examining the full settlement agreement or by appearing at the settlement hearing. Most important to the motion at bar, the notice does not have to inform the class on issues which do not involve the class litigation. The notice is meant to summarize the settlement agreement, and not to provide a *post mortem* of all issues growing out of the prior transactions between the parties.

In the pending motion, movants allege that the Notice of Settlement should have disclosed to the plaintiff class that it would continue to remain liable for all arrearages on the Notes, and might not be able to raise certain defenses and counterclaims in suits brought for collection of the Notes. The Court does not dispute that these questions would be of great interest and relevance to class members formulating a decision whether to opt out or to remain in the class. However, the issue of continuing liability on the Notes was not part of the

---

fraud the Court or those members of the plaintiff class who were in arrears on their Notes.

**4.** Rule 23(c)(2) requires that the notice advise each member of the class that exclusion from the class is available upon request, that any judgments entered, whether favorable or not, will bind all non-excluded class members, and that all class members who do not request exclusion may enter an appearance through counsel. Rule 23(d) provides that the district court may issue orders requiring the class to be advised of the effects of any proposed judgments or settlements, or of the rights of absent class members to be heard on a variety of matters concerning the course of the litigation. Finally, Rule 23(e) requires that "notice of [a] proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Pursuant to this authority, the Court approved by order dated June 8, 1989 the proposed notice of settlement submitted by the parties.

claims forwarded or the relief sought in the class litigation and was not resolved as part of the settlement agreement. The fact that the release provisions of the settlement agreement may have ramifications on disputes between the parties which were not part of the class claims does not require discussion or disclosure of such ramifications in either the Notice of Settlement or the settlement agreement itself.

In *National Super Spuds v. N.Y. Mercantile Exchange, supra,* 660 F.2d 9, the Second Circuit found a notice of settlement to be deficient due to misleading statements and omissions concerning the release provisions of the settlement. Although the class certified in federal court included all persons "who liquidated their long positions" in certain potato futures between specific dates, the release negotiated by the parties also barred claims based on related unliquidated potato futures which were at that time being litigated by certain members of the plaintiff class in state court. Although the text of the full settlement agreement clearly covered claims based on the unliquidated futures, the notice of settlement made no mention of this aspect of the release. At least one member of the plaintiff class studied the full text of the settlement agreement, realized the effects of the release on the state court action based on the unliquidated futures, and filed objections with the federal court at the settlement hearing. The Second Circuit reversed the district court's approval of the notice under such circumstances.

The factual distinctions between the *National Super Spuds* case and the case at bar should be clear. In *National Super Spuds,* the notice actually omitted to state important provisions of the release which were explicit in the settlement agreement. A diligent class member timely filed objections which were improperly rejected by the district court. In the case at bar, the Notice accurately represented the release provision which had been executed between defendants and representatives of the plaintiff class. The Court does not believe that due process requires further explanation of the effects of the release provision in addition to the clear meaning of the

words of the release. In a situation such as at bar, movants had the responsibility to study the release, to determine its effects on their personal affairs, and to decide whether to opt out from the settlement agreement.

Movants were at all times aware of their arrearages on the Notes. In the cases of Jerome and Kenneth Moskowitz, there is evidence that NPA specifically advised them during 1988 that NPA considered the unpaid amounts still due. Nothing in the Notice or the settlement agreement itself implies or suggests that this liability would be relieved by the settlement. Movants themselves came to the conclusion that the class action settlement would relieve them of their liability on the Notes, and terminate all disputes between the parties growing out of the limited partnership investments. Movants' mistaken interpretation of the class action settlement, however, would lead to the illogical result that each member of the class would receive a share from the settlement fund proportional to their purchased interest regardless of whether he was in arrears on his Notes or not. Those investors who had defaulted on their Notes would receive a windfall, while those who had fully paid their Notes would suffer an increased proportional loss.

■ Movants have failed to make the necessary showing under Rule 60(b) that the orders of the Court approving the Notice of Settlement and the settlement itself were deficient under the constitution or other authority. As due process has not been violated, movants cannot maintain their claims under Rule 60(b)(4). As movants have not demonstrated that the facts of this case rise to the level of "extraordinary circumstances" requiring relief from the orders of the Court, movants cannot maintain their claims under Rule 60(b)(6). On the other hand, the Court believes that in the interests of finality, the class action settlement executed by the parties should not be disturbed. *See Kotlicky, supra,* 817 F.2d at 9. It is likely that if the Court were to grant movants' Rule 60(b) motion, other class members would come forward to request exclusion and the settlement

would begin to unravel. Even in light of the suits brought by NPA to collect on the Notes, the Court believes that the settlement was executed in a just procedural fashion and achieved just substantive ends. Therefore, the Court wishes to preclude any potential threats to settlement agreement as a whole.[5]

## C. Adequate Representation of the Class

██ Movants allege that the individual class representatives and class counsel could not adequately represent the class, as their interests were "diametrically opposed" to those of movants. Movants' Memorandum of Law, at 12. More specifically, movants argue that the class representatives negotiated an improperly broad release provision which affected individuals in the plaintiff class in disparate ways, depending on the amounts remaining to be paid on the individual's Notes. Thus, recent factual developments in the case—i.e., the filing of the lawsuits by NPA against movants—mandate that the Court vacate its prior finding pursuant to Fed.R.Civ.P. 23(a)(4) that the class representatives would adequately represent the interests of the class.[6]

For adequate representation to be assured, the putative class members need not be identically situated. "Generally, if the representatives' interests are coextensive with the rest of the class, they will not be viewed as antagonistic, a key factor in determining the adequacy of the representation." Wright & Miller, *Federal Practice and Procedure*, § 1769, at 367. The Second Circuit has recently noted that "it is settled that the mere existence of individualized factual questions with regard to the class representative's claim will not bar class certification." *Gary Plastic, supra,* 903 F.2d at 180 (*citing Green v. Wolf Corp.,* 406 F.2d 291, 295, 298 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969)) (affirming the district court's denial of a motion for class certification due to "unique defenses" asserted by the class representative).

The Court views the aim of the class litigation as obtaining the largest attainable monetary award from defendants based on the alleged illegal activity. The class representatives negotiated a settlement amount and executed a release provision which appears to discharge defendants, including NPA, from future claims based on the transactions at issue. Counsel for the plaintiff class and named plaintiffs were properly situated to pursue these objectives on behalf of all plaintiff class members.[7]

Notice of the release provision was provided to members of the plaintiff class, who were given the opportunity to opt out the settlement agreement. This option allowed those absent class members who believed that the settlement was not in their best interests to leave the class and con-

**5.** In addition to the arguments made in the text of this opinion, the Court would find as a matter of fact that Jerome and Kenneth Moskowitz were served with the summons and complaint in the state court action seven days before the class settlement hearing and three weeks before the extended opt-out period expired. Such a finding of fact bolsters the holding of the Court with regard to Jerome and Kenneth Moskowitz. Not only is any issue of bad faith on the part of NPA dispelled by service of the state court complaint before final consummation of the class action settlement, but movants in this instance were provided with an opportunity to consider the proposed settlement in light of the state charges brought against them. The Court does not accept the assertion of Kenneth Moskowitz that more time would have been required to assess the effects of the settlement agreement on the state court charges. *See* Reply Affidavit of

Kenneth Moskowitz, sworn to on April 10, 1990, ¶ 6. The Court believes that there was sufficient time for study of the complaint and the release provisions of the proposed settlement, and formulation of arguments to put before the Court and counsel at the settlement hearing.

**6.** Movants could also have framed their objections in the context of the typicality requirements of Rule 23(a)(3). *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990).

**7.** It is noteworthy that two of the named plaintiffs are in arrears on their Notes—Sheldon Smith *in the amount of $71,265,* and James Errant in the amount of $38,008. Levy Aff., ¶ 3. The Court has not been informed as to whether NPA has filed lawsuits against them for the arrearages on their Notes.

duct the litigation on their own. Movants were given an opportunity to study the proposed settlement agreement and to consider it in light of the fact that they were in arrears on their Notes and might be subject to future liability. Such an inquiry would have caused them to take appropriate action and perhaps to opt out of the class. The Court views the certification of the class, and the negotiation of the settlement agreement, as wholly legal and proper in this case. The system provided an opportunity for class members dissatisfied with the settlement to leave the plaintiff class if they believed the settlement not to be in their best interests. Movants did not do so and must suffer the results.

## CONCLUSION

Movants' motion pursuant to Fed.R. Civ.P. 60(b) is denied.

SO ORDERED.