■ ROBERT MOSBERG, Appellant, v NATIONAL PROPERTY ANALYST, INC., Respondent. [630 NYS2d 50] —Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered March 7, 1994, which denied plaintiff's motion for summary judgment and granted defendant's cross motion for an order dismissing the complaint, affirmed, without costs or disbursements.

Plaintiff, Mosberg, is a limited partner of Tinley Plaza Associates, a real estate limited partnership, and defendant National Property Analyst, Inc. (NPA) is the general partner.

A class action was commenced in the Federal District Court by investors in the limited partnership and Mosberg and thousands of others took part in a settlement of that action, which the Federal court approved on July 27, 1989, setting August 10, 1989 as the final date for members of the plaintiff class to opt out of the class for settlement purposes (*O'Brien v National Prop. Analysts Partners*, 739 F Supp 896 [SD NY]). Plaintiff not only did not opt out, he actively participated in the settlement. To insure settlement payments made, Mosberg completed a "Proof of Claim and Release and Vote on Consolidation" which he executed on March 1, 1990. This clearly incorporated the terms of the settlement agreement, which contains section 3.1 (a), headed "Release of Claims by Plaintiffs" and reads, in pertinent part: "Upon the Settlement Effective Date (and as a part of each Proof of Claim) NPA * * *

shall be released and be deemed released by all members of the Settlement Class (with respect to all direct and class claims) and all members of the Derivative Settlement Class (with respect to all derivative claims) hereby and thereby from any and all and all [sic] manner of actions, claims, causes of action, allegations or rights whatsoever, whether class or individual in nature, whether in law or in equity, whether based on federal or state law, including, without limiting the generality of the foregoing, any and all suits, claims, demands, debts, liabilities, obligations, promises or controversies which any of the members of the Settlement Class (with respect to all direct claims), any of the members of the Derivative Settlement Class (with respect to all derivative claims), or any of them, ever had, now have or may hereafter have, including Unknown Claims, against any or all of the foregoing persons or entities, by reason of, based upon, or arising out of or in connection with, directly or indirectly * * * the Partnerships * * * the operations of the Partnerships * * * and any of the facts, circumstances, representations, statements, reports, disclosures, transactions, events, occurrences, acts, omissions, or failures to act, of whatever kind or character whatsoever, irrespective of the state of mind of the actor performing or omitting to perform the same, that are or at any time could have been alleged, referred to, alluded to or reflected in the Action, either as an individual, class or derivative claim, as well as all allegations in the Action (collectively referred to as the 'Released Claims'), together with such other releases as the parties hereto may agree are appropriate."

The one-unit interest Mosberg had purchased in the Tinley limited partnership was governed by a partnership agreement, which, *inter alia*, provided that a limited partner could require the general partner to buy his/her unit(s) (the Put Option), by giving written notice between July 1, 1988 and December 31, 1990 (the Exercise Period). Plaintiff, on July 8, 1990, attempted to exercise this Put Option, and when defendant NPA refused payment, plaintiff brought this action for the exercise price, plus interest.

We agree with the IAS Court that plaintiff by taking part in the settlement and agreeing to the release, which is extremely broad, relinquished any prior partnership right to exercise the Put Option.

It is settled law that "the releasor, whether the issue arise in reformation or on construction of the instrument, must sustain the burden of persuasion if he is to establish that the general language of the release, valid on its face and properly exe-

cuted, is to be limited because of a mutual mistake, or otherwise does not represent the intent of the parties" (*Mangini v McClurg*, 24 NY2d 556, 563). Plaintiff, the releasor herein, failed to meet this burden. The language of the release embraces all possible matters arising between the parties relating to plaintiff's initial investment in Tinley, including the claimed breach of the partnership agreement, asserted in the complaint herein.

Further, when plaintiff entered into the settlement and executed the release, approximately two-thirds of the Exercise Period for the Put Option had already elapsed. Plaintiff either knew or should have known that claims arising out of an attempted exercise of the Put Option were within the broad terms of the release, which covered not only claims involved in the Federal litigation but any claims which could have been litigated (*Mar Co. Export v Banco De Santander-Puerto Rico*, 99 AD2d 403, 404). Plaintiff would not have received two distributions of cash from the *O'Brien* settlement fund (on July 15, 1991 and on January 5, 1992), and have received or be scheduled to receive another final distribution, if defendant NPA, which accepted his release, was also required to purchase back his partnership interest. This would create a windfall for plaintiff that the terms of the release were designed to prevent. In *O'Brien v National Prop. Analysts Partners* (739 F Supp 896, *supra*), the District Court denied a motion by various limited partners for relief from the settlement agreement, even though the release allegedly prevented them from raising certain defenses and counterclaims, in suits filed by NPA in New York State courts, on notes they had executed for their partnership interests. That court noted that to relieve the limited partners therein would give a windfall to those investors who had defaulted on their notes, while those who had fully paid the notes would suffer an increased proportional loss (*supra*, at 902). This is directly analogous to the windfall Mosberg would receive benefiting from the settlement cash distributions, by not opting out of the settlement, if he is also able to sell his partnership interest. He truly will "eat his cake and have it too".

We agree with the Federal District Court in *O'Brien* that "[T]he Court does not believe that due process requires further explanation of the effects of the release provision in addition to the clear meaning of the words of the release. In a situation such as at bar, movants had the responsibility to study the release, to determine its effects on their personal affairs, and to decide whether to opt out from the settlement agreement"

(*supra*, at 902). Plaintiff herein had the same opportunity and responsibility to study the release, and if he wished to proceed to exercise the Put Option, instead of receiving the fruits of the settlement, could have opted out of the settlement. He chose not to do so and, therefore, is bound by its broad terms which encompass the attempted exercise of the option.

As the dissent recognizes, we decide that the settlement extends to the contractual relationship between the parties. We could hardly do otherwise in view of the language of the settlement which releases the defendant from "all manner of actions, claims, causes of action, allegations or rights whatsoever", including "any and all suits, claims, demands, debts, liabilities, obligations, promises or controversies * * * including Unknown Claims". A conclusion that language only includes tort, not contract claims, appears strained. In concluding otherwise, we give effect to the plain language and express terms of the settlement and release entered in the Federal court.

We do not "presume to usurp the role of the United States District Court for the Southern District of New York by adjudicating this controversy" (dissenting mem, at 489). We simply fulfill our constitutional and statutory duty by deciding an issue properly before us by extending res judicata effect to an order of the Federal court. Concur—Ellerin, J. P., Ross, Nardelli and Williams, JJ.

Rubin, J., dissents in a memorandum as follows: At issue in this action is the interpretation of a stipulation incorporated into the order entered in settlement of a Federal class action lawsuit. This appeal raises a question regarding the extent to which a State court may presume to adjudicate an issue that should properly be addressed to the court in which the subject order was entered. Because the majority choose to ignore rulings by the Federal court regarding the scope of the settlement order, which are at considerable variance with their own assessment, I respectfully dissent and would, at the least, dismiss the action without prejudice to an appropriate application before the United States District Court for the Southern District of New York.

Plaintiff Mosberg is a limited partner in Tinley Plaza Associates, LP ("Tinley"), a commercial real estate venture organized and sponsored by the defendant general partner, National Property Analyst, Inc. ("NPA"). This dispute arises out of Mosberg's attempt to exercise a put (an option to sell his interest in the partnership to the general partner at a specified price) pursuant to section 3.6 of the limited partnership agreement

with Tinley. On or about July 16, 1990, by letter dated July 8, 1990, plaintiff alleges that he gave NPA due notice pursuant to the agreement to exercise his put option. Applying the provisions of section 3.6 (c) of the limited partnership agreement, plaintiff calculates the option price to be $66,937.50.

NPA resists payment of its obligation under the option clause, claiming that notice was improper because plaintiff did not send the letter return receipt requested or by certified mail. NPA further disputes plaintiff's method of calculating the value of the put option and asserts that, in any event, it has been released from its obligations under the option provision by plaintiff's participation in a class action lawsuit.

On July 27, 1989, Tinley, along with many other NPA-sponsored limited partnerships, settled a Federal class action suit (*O'Brien v National Prop. Analysts Partners*, 739 F Supp 896 [SD NY]) against the general partners of the various limited partnerships (NPA or a general partner substituted by NPA) named as defendants in that lawsuit. It is NPA's contention that plaintiff, as a party to the agreement settling the action, released NPA from its obligations under the option clause of the limited partnership agreement by virtue of a general release contained in the settlement agreement. It is undisputed that plaintiff Mosberg was a member of the settlement class, signed the release and, pursuant to the settlement agreement, received at least two distributions from the settlement fund in an amount not disclosed in the record.

Upon NPA's motion for summary judgment, Supreme Court dismissed plaintiff's action on the ground that it is barred by the release executed in connection with the settlement of *O'Brien v National Prop. Analysts Partners (supra)*. Therefore, the court did not reach the question of notice as a precondition to plaintiff's right to exercise the option contract nor address the method of evaluating the option employed by plaintiff.

The release signed by plaintiff Mosberg states, in pertinent part: "Upon the Settlement Effective Date (and as part of each Proof of Claim) NPA and all General Partners * * * shall be released and be deemed released by all members of the Settlement Class * * * from any and all * * * manner of actions, claims, causes of action, allegations or rights whatsoever, whether class or individual in nature * * * including without limiting the foregoing, any and all suits, claims, demands, debts, liabilities, obligations, promises or controversies which any member of the Settlement Class * * * ever had, now have or may hereafter have, including unknown claims, against any or all of the foregoing persons or entities, by reason of, based

upon or arising out of or in connection with, directly or indirectly * * * the partnerships * * * *that are or at any time could have been, alleged, referred to, alluded to or reflected in the Action, either as an individual, class or derivative claim"* (emphasis added).

At the outset, it should be observed that the parties have presented this case to the Court in an ungainly procedural posture because the propriety of deciding the ultimate question is in doubt (*see, Manufacturers Hanover Trust Co. v Crossland Sav.*, 177 AD2d 78, 82). While they do not raise the issue, it is apparent that the ruling plaintiff seeks from the courts of this State is one that affects a prior order of the United States District Court for the Southern District of New York. Arguably, this Court may entertain, as a matter of contract interpretation, the question of whether the settlement agreement reached in the Federal action alters the rights and obligations between the limited partners and the general partner, as set forth in the limited partnership agreement (*Mangini v McClurg*, 24 NY2d 556, 562-563). But that is the absolute extent of our authority. Should it ultimately be determined, as the majority has decided, that the settlement extends to the contractual relationship between the parties, the State courts lack the power to grant plaintiff any relief from the operation of the order, which is res judicata as to issues subject to its operation (*Vavolizza v Krieger*, 33 NY2d 351, 356).

Turning to the question of whether this Court, as a matter of comity, should even undertake to adjudicate the scope of the settlement order, it is clear that an application made with respect to a State court order must be addressed to the court that issued it (CPLR 5015 [a]; 2221). Like the State procedural requirement, the principle of comity is invoked to avoid unseemly conflicts in rulings issued by courts of concurrent jurisdiction (*State of New York v Thwaites Place Assocs.*, 155 AD2d 3, 7, citing *Pennsylvania v Williams*, 294 US 176). As a practical matter, the court that supervised the settlement is in a far superior position to declare what is and what is not embraced within the ambit of the settlement order. If this action is to be dismissed, it should therefore be dismissed as a matter of comity, without prejudice to an application by plaintiff for relief in Federal court (Fed Rules Civ Pro, rule 60 [b]).

Addressing the merits of this appeal involves the Court in considerable complexity. A stipulation or release is subject to interpretation as a contract and, where a contract is straightforward and unambiguous, its interpretation presents a ques-

tion of law for the court (*Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 192 AD2d 83, 86, *affd* 84 NY2d 430 [citing *West, Weir & Bartel v Mary Carter Paint Co.*, 25 NY2d 535, 540; *Eden Music Corp. v Times Sq. Music Publs. Co.*, 127 AD2d 161, 164]; *e.g.*, *Ruttenberg v Ruttenberg*, 160 AD2d 395). If, however, an ambiguity is present, construction of the release is a question of fact (*Mangini v McClurg, supra*, at 568-569). Under those circumstances, it is clearly the prerogative of the court that supervised the settlement and incorporated the release into the settlement order to delineate its intended scope (*Parker v 151 E. 83rd St. Tenants Corp.*, 171 AD2d 599, 600).

Some sense of the subject matter intended to be governed by the release may be gleaned from the nature of the class action and from subsequent rulings in the case by the Federal court. The Federal lawsuit was fundamentally a fraud action (*O'Brien v National Prop. Analysts Partners*, 719 F Supp 222, 224). While an alleged agreement might well be struck down on the ground that a party was induced to enter into it by fraud, it is clear that, in *O'Brien*, the rights and obligations of the parties under the limited partnership agreement were not obviated by the settlement order. Denying an application to vacate the settlement by limited partners who had not fully paid for their interests in the partnership, the court emphasized, "The Notice does not contain any provisions concerning the effects of the settlement agreement on claims brought by NPA against members of the plaintiff class, based on the Notes or otherwise. There is no language which states or implies that all claims brought by any party concerning the underlying transactions are forever barred" (*O'Brien v National Prop. Analysts Partners*, 739 F Supp 896, 899, *supra*). The court held that "the issue of continuing liability on the Notes was not part of the claims forwarded or the relief sought in the class litigation and was *not resolved* as part of the settlement agreement" (*supra*, at 901-902 [emphasis added]). The court further noted, "The fact that the release provisions of the settlement agreement may have ramifications on disputes between the parties which were not part of the class claims does not require discussion or disclosure of such ramifications in either the Notice of Settlement or the settlement agreement itself" (*supra*, at 902).

It is clear from these pronouncements that defendant NPA overstates the intended effect of the release. It is not, as NPA asserts, "designed to embrace all possible matters arising between the parties that relate in any way to Mosberg's investment in [Tinley]" but is limited to *the claims forwarded or the relief sought in the class litigation*" (*O'Brien v National Prop.*

*Analysts Partners*, 739 F Supp, *supra*, at 901-902 [emphasis added]). While this Court may confidently conclude that the release is not all-encompassing, less confidence can be expressed about its "ramifications on disputes between the parties which were not part of the class claims" (*supra*, at 902).

In my estimation, it is apparent that the Federal court settlement order is not intended to affect the rights and duties of the parties under the various limited partnership agreements governed by the settlement. The settled action sounds in tort, not contract, and it is clear from the disposition of the motion concerning liability to pay for their partnership interests (739 F Supp 896, *supra*) that the limited partners remain in a contractual relationship with the various general partners. Furthermore, plaintiff emphasizes that he did not elect to participate in a "roll-up" of the limited partnership, offered as an optional part of the settlement, and defendant NPA points to no language in the settlement order that purports to modify or rescind the partnership agreement.

If, despite the Federal court's pronouncement to the contrary, the settlement order may be read as all-inclusive, as the majority suggest, the disposition made by Supreme Court is still not sustainable. If the settlement order is subject to broader construction than it has been accorded by the court that issued it, then it must be regarded as equivocal. In such event, its interpretation presents a question of fact, and the majority may not presume to usurp the role of the United States District Court for the Southern District of New York by adjudicating this controversy. In this event, the action should be dismissed without prejudice, in deference to the prerogative of the Federal court to interpret its own order.

Accordingly, the order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered on or about March 7, 1994, which denied plaintiff's motion for summary judgement and granted defendant's cross motion, dismissing the complaint, should be reversed, on the law, the motion denied and the complaint reinstated, without costs.