**In re PRUDENTIAL SECURITIES IN-CORPORATED LIMITED PART-NERSHIPS LITIGATION.**

**No. 1005 M–21–67 (MP).**

United States District Court, S.D. New York.

Dec. 9, 1996.

---

Fredrickson, Mazeika & Grant, San Diego, CA, by Robert L. Friedenberg, for Class Member Michael J. Piscitelli.

Milberg, Weiss, Bershad, Hynes & Lerach, New York City, by George A. Bauer, III, Class Counsel.

Cahill Gordon & Reindel, New York City, by Thomas J. Kavaler, for Prudential Securities Incorporated.

Goodkind, Labaton, Rudoff & Sucharow, New York City, by Lisa Ghartey, Class Counsel.

### *Preliminary*

MILTON POLLACK, Senior District Judge.

Michael Piscitelli was a broker with PSI ("Prudential Securities Incorporated") who has been on disability leave since May 1993. He is the owner of limited partnerships sold by PSI and has instituted an arbitration proceeding before the New York Stock Exchange Arbitration tribunal asserting therein that he sustained reputation and business injury to his reputation as a broker for PSI through marketing their Limited Partnership products.

On November 20, 1995, an Order and Final Judgment were entered settling this Class action between the plaintiff Class and the PSI Settling Defendants. On May 15, 1996, a member of said Class, movant Michael J. Piscitelli, sought relief under Rule 60(b), Fed. R.Civ.P., from said Order and Final Judgment on the grounds that he was not within the scope of the settlement and that he did not personally receive notice thereof and did not know about it. In view of the dubious character of those claims in light of the movant's connection with PSI, the Court ordered discovery and the Movant was examined under oath and his examination and cross-examination were videotaped and documentary evidence was adduced and furnished to the Court.

Having duly considered the proofs submitted and having evaluated the issues of credibility with the benefit of the videotaped session which the Court reviewed in detail and having heard the argument of counsel, the Court denies the motion and sets forth herein its Findings of Fact and Conclusions of Law in connection with its Opinion and Decision on the matters involved in denying said motion.

## I.

### *FINDINGS OF FACT*

#### *Background*

1. The partial settlement in this class action lawsuit arose out of an alleged fraudulent scheme during the 1980s undertaken by Prudential Securities Incorporated ("PSI") and its affiliates to uniformly organize, market, sell and operate approximately 700 Limited Partnerships. The representative plaintiffs in the consolidated actions filed a Consolidated Complaint dated June 8, 1994

asserting claims under RICO as well as various common law claims.

2. On August 9, 1995, the PSI Settling Defendants entered into a Settlement Agreement with the putative class of purchasers of Limited Partnerships. The Settlement Agreement provided for a $110 million recovery for the plaintiff Class in return for a broad release from settling Class Members.[1]

3. On August 29, 1995, this Court entered a Preliminary Order and issued an opinion in connection therewith which preliminarily approved the proposed Settlement and preliminarily certified a Class of plaintiffs consisting of all persons or entities who: "purchased Units in any of the Partnerships or other entities ... between January 1, 1980 and June 8, 1994." The proposed Class definition excluded, *inter alia*, persons or entities whose claims had been released, the Partnerships, defendants and the individual defendants' immediate families.

4. Movant, by virtue of his purchase of Units in several of the Partnerships, is a Class Member.

5. This Court's August 29, 1995 Preliminary Order also approved of the form and content of the Notice to be provided to absent Class Members. The Court also approved the procedure for the dissemination of the Notice which included: 1) mailing the Notice to all Class Members who could be identified with "reasonable effort" by Lead Class Counsel with the cooperation of the PSI Settling Defendants by making their books, records and information available to Lead Class Counsel ("Class Notice"); and 2) publishing the Notice in the national editions of *The Wall Street Journal, The New York Times* and *U.S.A. Today* twice within ten days of the Class Notice mailing ("Published Notice").

6. Both the Class Notice and Published Notice informed Class Members of the necessity to opt out by October 30, 1995 if a Class Member desired to proceed individually with his or her claims against any of the Settling Defendants or Released Parties. Approximately 5800 Class Members opted out of the Class Settlement. Movant did not opt out.

7. On November 17, 1995, this Court conducted a Fairness Hearing to determine the fairness, reasonableness and adequacy of the Settlement. Neither Movant nor his counsel appeared at the Fairness Hearing or otherwise raised any objection to the Settlement at that time.

8. On November 20, 1995, this Court made Findings of Fact and Conclusions of Law regarding the Settlement which are incorporated herein. In the November 20, 1995 Facts and Conclusions, this Court determined that certification of the Settlement Class was appropriate because the Class satisfied each element of Federal Rule of Civil Procedure 23(a) including the Rule's requirements of adequate representation and typicality, as well as those of Federal Rule of Civil Procedure 23(b)(3).

9. Also on November 20, 1995, this Court entered its Order and Final Judgment 1) finally certifying a Settlement Class against the PSI Settling Defendants and Released Parties; 2) approving the Settlement Agreement; 3) dismissing all Settled Claims by Class Members against the PSI Settling Defendants and Released Parties on the merits and with prejudice; and 4) enjoining Class Members from instituting, commencing or prosecuting any action or proceeding asserting any of the Settled Claims against the PSI Settling Defendants or Released Parties.

10. After entry of the Order and Final Judgment, this Court addressed the motions of various Class Members pursuant to Rules 6(b) and 60(b), Fed.R.Civ.P., for extraordinary relief from the Final Judgment and permission to opt out belatedly. Some of those movants were, like the instant Movant,

---

1. Specifically, the Settlement Agreement provided that Class Members would release all "Settled Claims" which were broadly defined as "any and all claims ... including both known and unknown claims, ... in connection with or which arise out of or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth or referred to in the Consolidated Complaint, or which relate in any way to the marketing, purchase, sale or holding of Units or other interests in, or to the operation, oversight, monitoring or management of, any of the Partnerships during the Class Period."

current or former PSI employees who made investments in the Partnerships and who were prosecuting individual actions against PSI stemming from alleged reputation and business injury allegedly suffered by reason of their sale of Partnerships. Those Class Members (the "broker-movants") argued in their motions that what they called their "employment claims" were not covered by the Class Settlement.

11. On February 1, 1996, this Court issued an Opinion supplementing its Orders on the various belated opt out motions of those seeking to be relieved of their failure timely to comply with the opt out deadline. That Opinion is incorporated herein. This Court held that the Notice form and procedures comported with due process. With respect to the claims of the Class Members who were former PSI employees, this Court held that the Release was broad enough to include their "employment claims". In addition, this Court noted that the Fairness Hearing was the proper forum to air a dispute over the breadth of the Notice and that, none of the broker-movants having objected there, their Rule 60(b) objections were too late.

### The Instant Motion

12. On May 15, 1996, Movant brought the instant motion pursuant to Federal Rule of Civil Procedure 60(b) for relief from the Order and Final Judgment in response to PSI's claim that the continued prosecution of Movant's arbitration proceeding against PSI pending before the New York Stock Exchange (the "NYSE arbitration")—wherein Movant was asserting claims against PSI arising out of his sale of Limited Partnerships—was in contempt of the Order and Final Judgment approving the Class Settlement.

13. Movant stated in his moving papers that his employment-related claims asserted against PSI in the NYSE arbitration are not covered by the Class Settlement because they do not relate to his purchase of Limited Partnerships. In that respect, Movant stat-

ed that he seeks relief primarily on the same legal grounds as set forth in the motions of the aforementioned broker-movants whose motions were denied as set forth in the February 1, 1996 Opinion.

14. Movant also maintained that he never personally received notice of the Settlement. Movant and his counsel, Robert Friedenberg, submitted to this Court signed declarations representing under penalty of perjury that neither had any knowledge whatsoever of either the Class Settlement or the existence of the class action proceedings pending before this Court prior to December 1, 1995.

15. In addition, Movant argued that his situation was unique in that unlike the previous broker-movants, he was a *current* PSI employee out on disability leave since May 1993. Movant contended that PSI "policy" prohibited him from participating in the Class Settlement. As such, Movant urged that PSI should be estopped from objecting to his belated opt out request because he was precluded by this "policy" from participating in the Class in any event.

16. PSI argued in opposition to Movant's request that where, as here, the Notice disseminated to the Class as a whole satisfied due process, Movant, as a Class Member, is bound by the Class Settlement whether he personally received notice of its existence or not.

17. PSI further contended that the notion that Movant, a disgruntled PSI broker who has spent years collecting information on PSI's limited partnership activities, did not know of the existence of these class action proceedings which culminated in the massive, well-publicized $110 million Settlement is incredible. Accordingly, PSI requested leave to take the depositions of Movant and his co-declarants[2] to the extent the Court gave any credence to their assertions.

18. On June 6, 1996, after hearing argument of counsel, this Court adjourned the proceedings to permit PSI to take the depositions of Movant and the other individuals

---

**2.** In addition to his own declaration and that of his counsel, Movant submitted the declarations of two former PSI brokers, Timothy N. Tremblay and Bernice E. Weiss, to the effect that they too

understood PSI to have a policy barring its employees from participating in class actions against it.

who submitted declarations in support of the instant motion. Although the legal insufficiency of Movant's position would suffice to deny his motion, the Court found his blanket denial of knowledge or the means of knowledge difficult to credit, and thus directed discovery.

### Movant and His Counsel Had Timely Knowledge of These Class Action Proceedings

19. Movant and his counsel were fully aware of the existence of these class action proceedings at the time of the Settlement.

20. First, Movant testified at his deposition that over two months before the opt out deadline he read a newspaper article containing a reference to these class action proceedings and he discussed that article with his attorney Mr. Friedenberg (who likewise read the article and, indeed, checked it carefully enough to verify that his own name was spelled correctly and that he was quoted correctly). The article, entitled "Promises of Riches Now Ring Hollow" appeared in the August 15, 1995 edition of *The San Diego Union Tribune.* The article was a review of *New York Times* reporter Kurt Eichenwald's book concerning PSI's limited partnership activities, *Serpent on the Rock.* Movant, a San Diego resident who figures prominently in that book, and his San Diego attorney Mr. Friedenberg were contacted by the author of the article for their comments. Movant was mentioned in the article and his attorney Mr. Friedenberg was actually quoted in the article. The article refers to these class action proceedings in New York and mentions attorney Brian Miller, another San Diego attorney who was the attorney of record in an action styled *Brian First, et al. v. Prudential–Bache Securities, Inc., et al.,* a putative class action which was transferred to this Court on August 3, 1994 and consolidated with the other actions in these proceedings.

21. Second, even after his departure on disability from PSI on May 23, 1993, Movant was highly focused on PSI's activities. Movant admitted that on some days he would spend up to four or five hours reading articles about PSI, speaking with PSI brokers across the country, and contacting attorneys and journalists, all in an effort to collect and share information regarding PSI's limited partnership activities.

22. Movant maintained voluminous files of all of the PSI-related information he gathered. Among the contents of these files were numerous documents promulgated to PSI employees via PSI's internal computerized communication system which Movant received from his sources at PSI even after he went on disability leave. Through these documents, Movant was able to keep abreast of PSI's limited partnership affairs, including its previous class action settlements as well as its settlements with the Securities and Exchange Commission and the United States Attorney. Given this demonstrated preoccupation with PSI, this Court finds Movant's assertion that he was unaware of PSI's monumental $110 million Settlement with the Class of investors herein not credible and hereby rejects the same.

23. Third, among the publications in which notice of the settlement appeared was *The Wall Street Journal.* Movant subscribed to *The Wall Street Journal* in 1995 and regularly perused that paper. The Court finds that, given the nature of Movant's occupation in the securities industry, coupled with his aforementioned preoccupation with PSI, his pending NYSE arbitration against PSI and his subscription to *The Wall Street Journal,* he had called to his attention or read one or more of the Notices or articles in that newspaper concerning the Class Settlement.

24. Fourth, the local and national press coverage of the Class Settlement was extensive. *The San Diego Union Tribune,* which Movant also subscribed to, reported on this Court's preliminary approval of the Class Settlement. Movant's own story had attracted both local and national attention. After being interviewed by *New York Times* reporter Kurt Eichenwald, Movant became a prominent character in Eichenwald's aforementioned book *Serpent on the Rock.* Movant intends to call Mr. Eichenwald as a witness at his NYSE arbitration against PSI. Thus, the Court finds that Movant had called to his attention or read one or more of the

articles contained in *The New York Times* and *The San Diego Union Tribune*.

25. Except for the SEC Claims Resolution process, none of the previous limited partnership-related class actions against PSI excluded PSI sales employees such as Movant from participating in the settlement, nor did the instant Class Settlement. The VMS settlement excluded executive officers of the defendants; movant was not an executive officer of PSI.

26. Moreover, neither Movant nor any of his co-declarants was able to identify an authoritative and objective source of a "policy" at PSI which precluded its employees from participating in class actions against PSI. Movant's own witness Mr. Tremblay testified that he in fact participated in the Energy Income class action settlement against PSI. No notice of any of the class action settlements by its terms precludes brokers from participating.

### PSI Relied To Its Detriment On Movant's Failure Either to Object or to Opt Out In a Timely Manner

27. The Court finds that it was the reasonable expectation of PSI and the other Settling Defendants that the $110 million Class Settlement would have the effect of providing a total and final resolution of all limited partnership-related claims against them, except as to opt outs who made themselves known by October 30, 1995 in the manner specified in the Notice.

28. As set forth more fully in this Court's February 1, 1996 Opinion, the PSI Settling Defendants bargained for the inclusion in the Settlement Agreement of a "blow" provision. It was stipulated as part of the proposed Settlement that if $10 million in claims which could be counted for that purpose timely excluded themselves, PSI had the right to walk away from (or "blow") the $110 million Settlement. The counted claims that opted out exceeded $10 million. PSI, after evaluating all claims, elected not to "blow" the settlement.

29. In making its decision whether or not to exercise its rights under the "blow" provi-

sion, PSI considered the quantity and quality of the opt outs timely received and regarded all other pending litigations and arbitrations of Class Members, like Movant, as encompassed within the $110 million Settlement.

30. PSI was entitled to and did rely to its detriment on Movant's failure to opt out or to object in a timely manner.

31. Movant has not identified any interest that he holds which has not been represented adequately by the representative plaintiffs and Class Counsel.

32. The foregoing shall constitute this Court's findings of fact.

## II.

### CONCLUSIONS OF LAW

■ 33. In a Rule 60(b) motion, the burden of proving sufficient grounds for relief from the Final Judgment is on the movant, and Rule 60(b) relief will only be granted upon a showing of extraordinary circumstances.[3] Movant has failed to demonstrate that such circumstances exist here.

■ 34. The Court concludes that because the Court-approved Notice program met and exceeded all requirements of Federal Rule of Civil Procedure 23(c)(2) and due process, Movant is bound by the Judgment, and his request for relief from the Judgment is inadequate as a matter of law. The sufficiency of the notice program is illustrated by the extensive Published Notice in which the notice was published on two occasions in each of *The New York Times, Wall Street Journal* and *U.S.A. Today* and the more than 274,000 notices mailed to prospective class members, as well as by the nearly 5800 opt outs and the 99,000 proofs of claim that were ultimately filed in this matter and the nationally widespread newspaper and other sources of financial comment on the settlement and its opt-out feature.

■ 35. As this Court held in the February 1, 1996 Opinion, a class action settlement is binding on an absent class member if the notice program is procedurally adequate,

---

**3.** *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir. 1986).

even if the absent class member does not receive personal written notice.[4]

36. Movant's argument that the Class Notice and the Published Notice were inadequate because they did not inform him that he was releasing his "employment claims" is without merit for the reasons set forth in the February 1, 1996 Opinion. Likewise, Movant's assertion that the notice program was inadequate because the class representatives failed to send him a copy of the Notice is without merit. The notice program, which employed PSI's Direct Investment Group account records as the source for class members addresses, was procedurally adequate.[5]

37. Although the procedural adequacy of the notice program makes it unnecessary to do so for these purposes, the Court concludes further that the record establishes that Movant and his counsel had both actual and constructive notice of the Class Settlement and Movant's rights with respect thereto.[6]

38. Rule 60(b) relief is particularly inappropriate where the relevant challenge is to a class action settlement.[7] In light of the procedural adequacy of the notice program, and especially given Movant's actual and constructive notice of the Settlement in time for him to have met the opt-out deadline, and PSI's reasonable reliance on his

failure to have done so, the Court finds that the interests of finality (and the other interests analyzed in this Court's February 1, 1996 Opinion) outweigh Movant's objections. Accordingly, the Court denies Movant's request for Rule 60(b) relief.

39. The foregoing shall constitute this Court's conclusions of law.

So ordered.

---

4. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir.1982); *see also Supermarkets Gen. Corp. v. Grinnell*, 490 F.2d 1183, 1185–86 (2d Cir. 1974); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir.1994); *Zimmer Paper Prods., Inc. v. Berger & Montague*, 758 F.2d 86, 91–93 (3d Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985) (citing cases); *Grunin v. International House of Pancakes*, 513 F.2d 114, 121–22 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *Presidential Life Insurance Co. v. Michael R. Milken, et al.*, 946 F.Supp. 267, 277 (S.D.N.Y. November 4, 1996); *Langford v. Devitt*, 127 F.R.D. 41, 44–45 (S.D.N.Y.1989); *In re VMS Ltd. Partnership Sec. Litig.*, No. 90 C. 2412, 1995 WL 355722, at *1 (N.D.Ill. June 12, 1995).

5. *See, e.g., Weinberger*, 698 F.2d at 71.

6. Movant's and his counsel's admissions that they read the August 15, 1995 article in *The San Diego Union Tribune* containing the reference to these class action proceedings is sufficient to charge both of them with notice thereof. *See Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983). Moreover, counsel's failure to take any steps to inquire into these referenced class action proceedings and their effect on his client's pending arbitration is particularly inexcusable. *See Langford v. Devitt*, 127 F.R.D. 41 (S.D.N.Y.1989). The knowledge of Movant's counsel regarding the class settlement is, of course, attributable to Movant. *See, e.g., Presidential Life Insurance Co. v. Michael R. Milken, et al.*, 946 F.Supp. at 267 n. 14; *Langford*, 127 F.R.D. at 44–45.

7. *See Supermarkets Gen. Corp.*, 490 F.2d at 1185–86; *Arthur Andersen & Co. v. Ohio (In re Four Seasons Sec. Laws Litig.)*, 502 F.2d 834, 843–44 (10th Cir.), *cert. denied*, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974); *VMS*, 1995 WL 355722 at *2; *O'Brien v. National Property Analysts Partners*, 739 F.Supp. 896, 902–03 (S.D.N.Y. 1990); *cf. Astroglass Boat Co. v. Eldridge (In re Astroglass Boat Co.)*, 32 B.R. 538, 543–44 (M.D.Tenn.1983).