Michael CARUSO, as Trustee of the Claudio Trust, dated February 2, 1990, and Gene Montesano, Plaintiffs,

v.

CANDIE'S, INC. and Licensing Acquisition Corp., Defendants.

No. 00 CIV. 9383(WCC).

United States District Court, S.D. New York.

June 20, 2001.

Cravath, Swaine & Moore (Rowan D. Wilson, Thomas G. Rafferty, Kenneth E. Lee, of counsel), New York City, for Plaintiffs

Blank Rome Tenzer Greenblatt LLP (Harris N. Cogan, of counsel), New York City, for Defendants.

### OPINION AND ORDER

CONNER, Senior District Judge.

Plaintiffs Michael Caruso, as trustee of the Claudio Trust, dated February 2, 1990, and Gene Montesano, bring this action against defendants Candie's, Incorporated ("Candie's" or the "Company") and the Licensing Acquisition Corporation ("LAC"), a wholly-owned subsidiary thereof, based upon breaches of contract and the duty of good faith and fair dealing in connection with alleged misrepresentations in their Stock Purchase Agreement. Defendants now bring this motion to dismiss pursuant to FED. R. CIV. P. 12(b), or in the alternative for summary judgment pursuant to FED. R. CIV. P. 56(b), contending that plaintiffs' action is barred on the grounds of release and *res judicata* based upon the previous settlement of the securities fraud class action, *Willow Creek Capital Partners v. Candie's, Inc.*, 99 Civ. 3618(CM).

All of the parties have submitted affidavits and documentary evidence that go beyond the pleadings and matters of which judicial notice may be taken. Therefore, we treat the motion as a one for summary judgment. Plaintiffs have submitted a FED. R. CIV. P. 56(f) affidavit requesting leave to conduct further discovery with respect to: (1) the interests of the settlement class representatives and their conduct during the class action; (2) whether the settlement class representatives were aware of plaintiffs' contract claims when they entered into the *Willow Creek* settlement agreement and whether they believed that they were representing these claims in connection therewith; (3) whether the *Willow Creek* defendants intended to release plaintiffs' contract claims when they entered into the settlement agreement; and (4) whether the *Willow Creek* defendants sent notice to plaintiffs about the class action. For the reasons stated hereinafter, defendants' motion for summary judgment is denied. However, plaintiffs will be permitted to seek discovery with respect to the specific matters delineated below.

### BACKGROUND

#### A. The Willow Creek Class Action

The *Willow Creek* class action was commenced on May 17, 1999 in the United States District Court for the Southern District of New York. The complaint alleged that Candie's and certain of its officers, in violation of sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l*(a)(2), 77(*o*), sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b–5, 17 C.F.R. § 240.10b–5, "made material misrepresentations concerning Candie's financial results and operations that caused Candie's stock price to be artificially inflated." (*Willow Creek* Complt. ¶ 4.) It alleged that for all four quarters of the Company's 1998 fiscal year and the first three quarters of the Company's 1999 fiscal year, the defendants improperly recognized revenue and reported false financial information in violation of SEC regulations and generally acceptable accounting principles. (Cogan Aff., Ex. C.)

As a result of the misrepresentations, all persons who purchased or acquired Candie's common stock from May 28, 1997 to and including May 12, 1999, did so at artificially inflated prices. The class was defined as:

all persons and entities, other than defendants, who purchased or otherwise acquired Candie's common stock between May 28, 1997 through May 12, 1999, inclusive (the "Class Period") and on behalf of all persons, other than defendants who, pursuant to a merger agreement between

Candie's and New Retail Concepts, Inc. ("New Retail"), exchanged their New Retail common stock for Candie's common stock.

(*Willow Creek* Complt. ¶ 1.)

On March 22, 2000, the Honorable Colleen McMahon certified the class for settlement purposes (hereinafter "the Settlement Class"), preliminarily approved the proposed settlement, approved the form and manner of notice to the members and ordered a settlement hearing. From April 7, 2000 to June 19, 2000, 21,877 notices of the settlement (the "Settlement Notice") were mailed to members and potential members of the Settlement Class. (Cogan Aff., Ex. C (Rosenbaum Aff. ¶¶ 2–4).) On April 7 and 14, 2000, the Settlement Notice was published in *Investor's Business Daily*. (*Id.* ¶ 8.)

The Settlement Notice defined the Settlement Class as any person "who purchased or otherwise acquired Candie's common stock between May 28, 1997 through May 12, 1999, inclusive." (Cogan Aff., Ex. C.) It informed shareholders that they would remain a member of the Settlement Class unless they excluded themselves therefrom by June 9, 2000. It also warned that:

> The Judgment will provide that all Settlement Class Members who do not validly and timely request to be excluded from the Settlement Class shall be deemed to have released and forever discharged all Settled Claims (to the extent members of the Settlement Class have such claims) against the Settling Defendants, including, without limitation, his or its respective . . . subsidiaries, . . . who are, or ever may become, liable with respect to the Settled Claims.

"Settled Claims" was defined as "any and all claims, actions or causes of action of whatever nature, character or description, whether known, unknown, suspected or unsuspected, which arise out of, or are in any way based on, connected with, or related to the matters alleged in the Consolidated Complaint in the Action."

The Settlement Notice advised shareholders that if they did not opt out of the Settlement Class, they could appear at the settlement hearing held on July 7, 2000, to present objections with respect to, *inter alia,* the adequacy of representation by the lead plaintiff's counsel. Finally, in order to participate in the distribution of the net settlement fund, all proofs of claim must be postmarked on or before September 1, 2000. (*Id.*)

On July 12, 2000, the action was dismissed with prejudice. Judge McMahon signed a Final Judgment and Order of Dismissal which stated that:

> The Settlement Class Members shall be deemed conclusively to have released and are hereby permanently barred and enjoined from prosecuting against Settling Defendants, . . . subsidiaries, . . . *any and all claims, actions, or causes of action of whatever nature, character or description, whether known, unknown, suspected or unsuspected, which arise out of, or are in any way based on, connected with or related to the matters alleged in the Consolidated Complaint in this action.*

(Final J. and Order of Dismissal ¶ 5 (emphasis added).) Judge McMahon concluded that the notice given to the Settlement Class "was the best notice practicable under the circumstances . . . . and satisfied the requirements of due process." (*Id.* ¶ 8.) The Final Judgment and Order of Dismissal also attached the names and addresses of the six individuals who timely requested exclusion from the settlement. Plaintiffs were not within this group.

The parties settled for a total consideration of $10 million, payable in a combination of cash, the Company's common stock and convertible preferred stock. The Company made a final cash payment on October 30, 2000.[1]

## B. *The Instant Action*

On December 8, 2000, Michael Caruso, sole trustee of the Claudio Trust and President, Treasurer and Director of Michael Caruso & Co., Inc. ("Caruso & Co."), and Gene Montesano, Vice President and Director of Caruso & Co., filed the instant complaint against Can-

---

1. The Court is taking judicial notice of Candie's 10–Q Report filed for the period ending October 31, 2000. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 773–74 (2d Cir.1991).

die's and LAC, for rescission and damages for breaches of contract and duty of good faith and fair dealing. (Complt.¶ 11.) On September 24, 1998, the Claudio Trust and Montesano entered into a Stock Purchase Agreement and related acquisition purchase agreements with Candie's pursuant to which plaintiffs sold their interest in Caruso & Co. in exchange for approximately 2.5 million unregistered shares of common stock. (*Id.* ¶ 2; Caruso Decl. ¶ 3.) This constituted 10% of Candie's outstanding common stock and made the Claudio Trust the second largest shareholder of Candie's. (Caruso Decl. ¶ 3.)

The gravamen of the instant complaint is that the misrepresentations made by Candie's in its SEC filings for all quarters of the 1998 fiscal year and the first, second and third quarters of the 1999 fiscal year constituted a breach of sections 7.4 and 7.4(b) of the Stock Purchase Agreement. Section 7.4 of the Stock Purchase Agreement provides that:

> As of the date hereof, Candie's has filed all forms, reports and documents required to be filed by Candie's with the SEC (collectively, the "Candie's SEC Reports"). The Candie's SEC Reports (i) at the time filed, complied in all material respects with the applicable requirements of the Securities Act and the Exchange Act, as the case may be, and (ii) did not at the time they were filed ... contain any untrue statement of a material fact or omit to state a material fact required to be stated in such Candie's SEC Reports or necessary in order to make the statements in such Candie's SEC Reports, in light of the circumstances under which they were made, not misleading. To the best of the knowledge of Candie's, there is no material adverse information with respect to Candie's which a reasonable investor would consider material in making an investment decision in a similar situation.

(Complt.¶ 28.) Section 7.4(b) of the Stock Purchase Agreement provides that:

> Each of the consolidated financial statements ... contained in the Candie's SEC Reports ... complied as to form in all material respects with the applicable published rules and regulations of the SEC with respect thereto, was or will be prepared in accordance with U.S. generally accepted accounting principles applied on a consistent basis throughout the periods involved ...., and fairly presented or will fairly present the consolidated financial position of Candie's as at the respective dates and the consolidated results of its operations and cash flows for the periods indicated ....

(*Id.* ¶ 29.)

In support of their claims, plaintiffs also rely on sections 8.2 and 8.4 of the Stock Purchase Agreement which provide that plaintiffs are entitled to indemnification for the breach of any representation, covenant or warranty in the Stock Purchase Agreement and that indemnification is the "sole remedy," but that nothing therein limits their right to "injunctive or other equitable relief." (*Id.* ¶¶ 43–44.)

Plaintiffs never opted out of the *Willow Creek* class action and never filed a Proof of Claim in connection therewith. (Caruso Decl. ¶ 13.)[2] Indeed, they argue that they were not members of the Settlement Class because they were not adequately represented by the class representatives and because they failed to receive notice thereof. Furthermore, they allege that their legal claims and requests for relief are separate and distinct from those raised in *Willow Creek*.

Finally, plaintiffs allege that Candie's did not intend to include them within the *Willow Creek* Settlement Class as evidenced by certain oral and written statements. In or around February 2000, Caruso allegedly met Neil Cole, President, Chief Executive Officer and Chairman of the Board of Directors of Candie's and a *Willow Creek* defendant. At this meeting, Cole allegedly stated that "you

---

**2.** No affidavit was submitted by plaintiff Montesano in connection with this motion. At the time plaintiffs submitted their opposition papers, he was out of the country. (*Id.* ¶ 16.) Caruso declared that on February 19, 2001, Montesano told him that he was never notified of the settlement and therefore did not opt out of the class action. (*Id.* ¶ 15.) Defendants argue that such statements are inadmissible hearsay. In any event, the Court is not persuaded by the affirmation and we base our decision upon the declaration of Caruso and other written evidence.

guys have been had," with respect to the Stock Purchase Agreement and suggested that the parties discuss a settlement of the indemnification claim. (*Id.* ¶ 7.) Later that month, Caruso again allegedly met with Cole and Barry Emanuel, a member of the Candie's Board of Directors and a *Willow Creek* defendant, and proposed a settlement agreement. (*Id.* ¶ 8.) In late April 2000, Cole told Caruso that the Company was focusing on settling a securities class action and wanted to defer any settlement with plaintiffs until after that action was settled. (*Id.* ¶ 9.) Caruso alleges that this was the first time he had become aware of the *Willow Creek* action. (*Id.*)

On May 8, 2000, Caruso faxed to the Company an outline of the verbal agreement made between himself, Cole and Emanuel in February 2000. (*Id.* ¶ 10.) Sometime in late June or early July, Caruso was informed that his proposal was rejected. (*Id.*) On September 7, 2000, plaintiffs' counsel provided written notice to Cole concerning plaintiffs' indemnification claims and proposed a tolling arrangement in an attempt to preserve plaintiffs' rights during any settlement discussions. (*Id.*, Ex. A.) On September 15, 2000, the parties entered into a written agreement, tolling plaintiffs' claims until November 15, 2000. (Caruso Decl. ¶ 10.) The agreement was extended in writing on November 14, 2000 and December 1, 2000. (*Id.*) When discussions reached an impasse, the instant complaint was filed.

Caruso alleges that at no time during the settlement discussions held between February and December 2000, did Cole suggest that the indemnification claims would be included within the class action. (*Id.* ¶ 11.) Rather, "Mr. Cole always acknowledged that settlement of [the indemnification] claims would be separate and apart from any settlement of the securities class action." (*Id.*)

## DISCUSSION

### I. *Legal Standard*

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-moving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. While a party seeking summary judgment carries the burden of demonstrating the absence of any genuine issue of material fact, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must enumerate "specific facts and circumstances supported by depositions, affidavits based on personal knowledge, and admissions" that create a rational inference in his favor and may not rely on conclusory allegations or denials. *General Elec., Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1452 (2d Cir.1991). In considering plaintiffs' motion for summary judgment, the Court must view all facts and construe all rational inferences derived therefrom in the light most favorable to defendants. *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Pauling v. Secretary of Dep't of Interior*, 160 F.3d 133, 136 (2d Cir.1998).

Under FED. R. CIV. P. 56(f), summary judgment "may be inappropriate where the party opposing it shows ... that he cannot at the time present facts essential to justify his opposition." FED. R. CIV. P. 56(e) advisory committee's note (1963). The nonmoving party must have "had the opportunity to discover information that is essential to his opposition" to the motion for summary judgment. *Anderson*, 477 U.S. at 250 n. 5, 106 S.Ct. 2505. When determining whether this Court should grant summary judgment in the absence of discovery several factors must be considered: (1) whether the lack of discovery was in any way due to fault or delay on the part of the nonmovant; (2) whether the nonmovant filed a sufficient Rule 56(f) affidavit explaining: (i) what facts are sought and how they are to be obtained, (ii) how those facts are reasonably expected to create a genuine issue of material fact, (iii) what

effort the affiant has made to obtain them, and (iv) why the affiant was unsuccessful in those efforts; and (3) whether the nonmovant provided any basis for its belief that further discovery would alter the outcome of the summary judgment motion. *See Berger v. United States*, 87 F.3d 60, 65 (2d Cir.1996); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995) (setting forth sufficiency requirements for 56(f) affidavit); *see also Infostar Inc. v. Worcester Ins. Co.*, 924 F.Supp. 25, 29 (S.D.N.Y.1996) (Conner, J.) (holding that summary judgment is not premature where no 56(f) affidavit and lack of discovery did not impede nonmovant's ability to make its argument).

## II.  Res Judicata

Pursuant to the doctrine of *res judicata* "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The parties do not dispute that the *Willow Creek* settlement decree constitutes a final judgment on the merits. *See Feuerman v. Sears, Roebuck & Co.*, No. 96 Civ. 0120, 1996 WL 648966, at *5 (S.D.N.Y. Nov.6, 1996); *Cahill v. Arthur Andersen & Co.*, 659 F.Supp. 1115, 1120 (S.D.N.Y.1986), *aff'd*, 822 F.2d 14 (2d Cir.1987). The dispute in this case concerns whether plaintiffs were members of the *Willow Creek* Settlement Class and whether the breaches of contract and implied duty of good faith asserted herein were issues that were either raised or could have been raised in *Willow Creek*.[3]

### A.  Same Parties or Privies

■ The Settlement Class was defined as "all persons ... who purchased or otherwise acquired Candie's common stock between May 28, 1997 through May 12, 1999, inclu-

sive." It must be emphasized that nowhere in the definition did it specify the manner in which shares were either acquired or purchased. Because the Stock Purchase Agreement was signed on September 24, 1998, plaintiffs clearly fall within this definition.

However, plaintiffs argue that they were not members of the Settlement Class because they were not adequately represented by the class representatives and, as stated above, request discovery in connection with this claim. Their argument is essentially twofold. First, they base their claim on the fact that their contract claims are distinct from claims of securities fraud. Indeed, they argue: (1) that the class representatives could not have asserted a contractual right to indemnification under the Stock Purchase Agreement because they were not parties to the contract; (2) that scienter need not be proven in a breach of contract and good faith and fair dealing cause of action, *see Burke v. Jacoby*, 981 F.2d 1372, 1378 (2d Cir.1992); and (3) that recission was not a remedy available to the Settlement Class. Second, because defendants could have asserted defenses against the rest of the class not applicable to themselves, they claim that they were not protected by the class representatives.[4] *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990) (holding that class certification is inappropriate where the class representative is subject to defenses which are atypical to the class and which pose a threat of becoming the focus of the litigation).

It is well settled that a class action judgment is binding on all class members. *See Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940). But to almost every rule there is an exception. With respect to the effect of a class action judgment, it is also well settled that such judgment will not bind

---

**3.**  LAC, a wholly-owned subsidiary of Candie's, is in privity with its parent. *See In re Teltronics Servs. Inc.*, 762 F.2d 185, 191 (2d Cir.1985); *JSC Sec., Inc. v. Gebbia*, 4 F.Supp.2d 243, 251 (S.D.N.Y.1998).

**4.**  The Motion to Dismiss of Mark Tucker, a defendant in *Willow Creek*, asserted the following defenses: (1) failure to comply with the pleading

requirements of the Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b), and FED. R. CIV. P. 9(b); (2) failure to allege a violation of Section 12(2) of the Securities Act of 1933; and (3) failure to allege control liability under Section 15 of the Securities Act. (Lee Rule 56(f) Aff. ¶ 7, Ex. A.) These defenses would be unavailable to defendants in this breach of contract action.

absent members if they were not accorded due process of the law. *See id.* at 41, 61 S.Ct. 115. Therefore, the preclusive effect of a prior judgment will depend upon whether members received adequate notice, an opportunity to appear and be heard, an opportunity to opt out of the class and adequate representation. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

In this case, the issue is whether due process would be violated by giving *res judicata* effect to the *Willow Creek* settlement. While most substantive and procedural errors are attacked on direct appeal, class actions have been collaterally attacked for the lack of adequate notice or adequate representation. In the landmark *Hansberry* case, the Supreme Court declined to give *res judicata* effect to a state court decision which purported to bind absent members that were inadequately represented. 311 U.S. at 45–46, 61 S.Ct. 115.[5] In that case, one group desired to uphold a restrictive covenant which the absent members would have opted to void. Furthermore, in *Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir.1973), the Fifth Circuit refused to give *res judicata* effect to a prior class action because the representatives failed to appeal the judgment thereby depriving the class of complete relief. *See id.* at 76.

Nonetheless, defendants argue that plaintiffs cannot collaterally attack the *Willow Creek* judgment on the grounds of inadequate representation because the Settlement Class was certified pursuant to FED. R. CIV. P. 23(b)(3). In *Gonzales* and all other cases cited by plaintiffs, *see, e.g., Barney v. Holzer Clinic, Ltd.,* 110 F.3d 1207, 1209 (6th Cir. 1997); *Taunton Gardens Co. v. Hills,* 557 F.2d 877, 878 (1st Cir.1977), the classes were certified pursuant to FED. R. CIV. P. 23(b)(2). This argument is not without merit.

There are basic differences between class actions certified pursuant to subsections (b)(2) and (b)(3). For example, there are no mandatory notice requirements in (b)(1) and (b)(2) actions. Subsection (b)(1) and (b)(2) members also do not have the opportunity to opt out of the class; an opportunity accorded to subsection (b)(3) class members. *See In re Four Seasons Sec. Laws Litig.,* 502 F.2d 834, 842 n. 9 (10th Cir.1974) (citing *Gonzales,* 474 F.2d at 74 n. 12). As a result, (b)(1) and (b)(2) class members "must necessarily rely on the representative to protect their interests." *In re Four Seasons,* 502 F.2d at 842 n. 9 (quoting *Gonzales,* 474 F.2d at 74 n. 12). It is for these reasons that the Tenth Circuit has distinguished *Gonzales,* which permitted a(b)(2) collateral attack, from class actions certified under (b)(3). *See In re Four Seasons,* 502 F.2d at 842.

However, we need not decide today whether absent (b)(3) class members may collaterally attack a final judgment on grounds of lack of notice or representation. A class certified pursuant to (b)(3) may indeed be inadequately represented by the class representatives. Both the Restatement and the Advisory Committee Notes to the 1966 Amendments to FED. R. CIV. P. 23 state that "the court conducting the action cannot predetermine the *res judicata* effect of the judgment; this can be tested only in a subsequent action." They do not distinguish between different types of class certification. Such a result could have the effect of requiring members to monitor the class action in order to determine whether their interests are being protected, thereby subverting the purpose of Rule 23. *See Gonzales,* 474 F.2d at 76; *see also* Note, *Collateral Attack on the Binding Effect of Class Action Judgments,* 87 HARV. L. REV. 589, 605–06 (1974) (stating that adequate notice does not necessarily cure inadequate representation). Rather, we rule that plaintiffs are not permitted to conduct discovery as to adequate representation or adequate notice because the evidence before this Court does not convince us that their due process rights were violated in *Willow Creek.*

The Second Circuit has stated that for representation to be fair and accurate, "class counsel must be qualified, experienced, and generally able to conduct the litigation. Second, the class members must not have inter-

---

5. Although the Supreme Court's analysis centered around inadequate representation, the case also stands for the proposition that inadequate

notice may be a denial of due process. *See id.* at 40.

ests that are antagonistic to one another." *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir.1996) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992)); *see National Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9, 17 n. 6 (2d Cir.1981).[6] There is no allegation that the class representatives were inexperienced in litigating the prior action. The dispute is whether plaintiffs' claims were antagonistic to those members of the class. We find that they were not. Plaintiffs clearly had a similar cause of action against defendants under the federal securities laws. The fact that they may have had additional common law causes of action should not allow them to argue that their interests were not typical of the class. We cannot allow a Settlement Class member who is deemed to have knowledge of the class action, *see infra* Part II.A.1., "to judg[e], retrospectively, whether its interests had been adequately represented at a time when it was capable of excluding itself if not satisfied." *In re Four Seasons*, 502 F.2d at 843. Therefore, we agree with the Tenth Circuit when it stated that:

> we do not feel bound in the instant proceeding by *Hansberry* and its progeny. For we consider here an action in which Ohio not only received notice of its inclusion within the designated class, with the concomitant right to opt out, but one in which Ohio was also apprised of the very terms of the impending judgment.

*Id.*

We are aware that class certification has been denied in situations where the relief sought by the class representative was not substantially similar to that sought by the members of the proposed class. *See, e.g., Maynard, Merel & Co. v. Carcioppolo*, 51 F.R.D. 273, 277–78 (S.D.N.Y.1970) (class representative seeking recission of a merger agreement was deemed to be adverse to the members of the class who would prefer a cash settlement); *Kilgo v. Bowman Transp., Inc.*, 87 F.R.D. 26, 28–29 (N.D.Ga.1980) (denying class certification because the representative's interest in back pay was not similar enough to those seeking injunctive or declaratory relief); *cf. Wilson v. Great Am. Indus., Inc.*, 94 F.R.D. 570, 572–74 (N.D.N.Y. 1982) (certifying class even though class representatives may have sought recission). However, these cases concerned the representatives' interests as compared to those of class members; not additional claims that one of the members may have possessed. Rule 23 merely "requires predominance, not identity or unanimity of issues among class members." *Dura–Bilt*, 89 F.R.D. at 93–94 (discussing the commonality requirement of Rule 23).

Finally, that the misrepresentations made by Candie's may have been made in the Stock Purchase Agreement is irrelevant. "There is no requirement that the factual basis for the claims of all members of a purported class be identical." *Daniels v. City of New York*, 198 F.R.D. 409, 418 (S.D.N.Y.2001) (quoting *Wilder v. Bernstein*, 499 F.Supp. 980, 992 (S.D.N.Y.1980)); *see Dura–Bilt*, 89 F.R.D. at 99 (stating that "a difference in the amount of damages, date, size, or manner of purchase, the type of purchaser, and even the specific document influencing the purchase will not render the claim atypical in most securities actions"). To the extent that the class members may perceive differences among their claims, such arguments should be made when the class was certified, *see Joel A. v. Giuliani*, 218 F.3d 132, 140 (2d Cir.2000), or at least at the

---

**6.** As a general matter, the adequate representation requirement has overlapped the other prerequisites of typicality and commonality pursuant to Rule 23. *See Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981). The typicality requirement reinforces the adequate representation requirement. "The theory is that if the claims and defenses are typical then there will be every reason for the representatives to support their own claims and so advance the claims of others in a like position," *Rosado v. Wyman*, 322 F.Supp. 1173, 1193 (E.D.N.Y.1970); *see Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72, 81 (S.D.N.Y.1998) (stating that the typicality requirement is met "if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory") (quoting *Dura–Bilt*, 89 F.R.D. at 98). We assume that this is the reason plaintiffs find some support for their argument by citing cases which refer to typicality rather than adequate representation.

settlement hearing. Failure to do so constitutes a waiver thereof. *See id.*

Accordingly, plaintiffs were adequately represented. If plaintiffs cannot prove their claims discussed *infra* Part III, they will be deemed to have been a member of the class in the *Willow Creek* action.

### 1. Notice

■ Plaintiffs request the opportunity to conduct discovery to determine whether notice was actually sent to them. Again, we conclude that they were not denied due process and may not seek discovery in connection with this claim.

The notice in *Willow Creek* was determined by Judge McMahon to be the best practicable under the circumstances. FED. R. CIV. P. 23(c)(2) provides, in pertinent part, that "[i]n any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")

As stated above, the Claims Administrator mailed 21,877 Settlement Notices to both members and potential members of the Settlement Class via first-class mail. On April 7, 2000, a copy of the Notice of Pendency was mailed to Caruso's attention at "2925 Mountain Maple Lane, Jackson, WY 83001." However, Caruso claims that he did not receive such notice because the listed address was not his correct mailing address on April 7, 2000 or even at the present time. (Caruso Decl. ¶ 14.) Moreover, because mail is sent to post office boxes in Jackson, Wyoming, Caruso argues that the address listed above is improper. (*Id.*) Finally, both before and after April 7, 2000, Caruso claims to have received at his correct mailing address, material from Candie's unrelated to the class action. (*Id.*)

Plaintiffs request discovery in an effort to determine whether notice was *sent* to them. We fail to see why this is necessary. This Court has found that the individual notices were mailed to the addresses Caruso provided to the Company. In the Stock Purchase Agreement, Caruso listed the "2925 Mountain Maple Lane" address as the one to which all notices should be delivered. (Cogan Reply Aff. ¶ 10, Ex. B.) It was also the same address Caruso listed on the issuance of the Certificate of Candie's Stock, the parties' Registration Rights Agreement and the one to which Candie's counsel opinion letter was sent. (*Id.* ¶¶ 11–13, Exs. C–E.) Because the notices to neither Caruso nor Montesano were returned as undeliverable, we must presume that they were in fact received. *See Fortunato v. Workers' Comp. Bd.*, 270 A.D.2d 641, 704 N.Y.S.2d 694, 696 (2000).

Even assuming *arguendo* that neither Caruso nor Montesano received individualized notices, we still conclude that they were fairly apprised of the settlement proceedings. The Settlement Notice was published twice in the *Investor's Business Daily* and the status of the action was repeatedly discussed in the Company's public filings. Candie's 10–Q Reports for the periods ending April 30, July 31, and October 31, 1999, each describe the *Willow Creek* action as being "brought on behalf of all persons who acquired securities of the Company between May 28, 1997 and May 12, 1999." (Cogan Reply Aff. ¶ 8, Ex. A.)

"[A] class action settlement is binding on an absent class member if the notice program is procedurally adequate, even if the absent class member does not receive personal written notice." *In re Nasdaq Market–Makers Antitrust Litig.*, No. 94 Civ. 3996, 1999 WL 395407, at *2 (S.D.N.Y. June 15, 1999); *see In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 947 F.Supp. 750, 755–56 (S.D.N.Y.1996); *see also Mullane*, 339 U.S. at 317–18, 70 S.Ct. 652. In this case, Judge McMahon expressly concluded that the notice given to the Settlement Class "was the best notice practicable under the circumstances" and that "[s]aid notice provided due

and sufficient notice of the proceedings." In *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir.1982), the Second Circuit stated that it would not disturb the notice procedure expressly approved by the district court because "[t]he manner of giving notice is committed to the sound discretion of the court." *Id.* at 71 (quoting 3B MOORE'S FEDERAL PRACTICE ¶ 23.80[3] at 23–513 (1982)). We will not allow plaintiffs to attack collaterally what they would most likely have been unsuccessful in attacking on direct appeal.

### B. *Same Causes of Action*

■ "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Saud v. The Bank of New York*, 929 F.2d 916, 919 (2d Cir.1991) (citations and emphasis omitted). A cause of action need not be expressly asserted in the prior case "[f]or it is the facts surrounding the transaction or occurrence which operate to constitute a cause of action, not the legal theory upon which a litigant relies." *Id.* (citations omitted). Finally, for the purposes of *res judicata*, the actions need only be "integrally related"; identity of claims is not required. *Feuerman*, 1996 WL 648966, at *6 (quoting *G & T Terminal Packing Co., Inc. v. Consolidated Rail Corp.*, 719 F.Supp. 153, 158 (S.D.N.Y.1989)).

■ A comparison of the complaints illustrates that the allegations in this case relate to the same misstatements in Candie's SEC filings that were the subject of the class action. (*Compare Willow Creek* Complt. ¶¶ 23, 60, 62, 63, 68, 70 *with* Complt. ¶¶ 22–24, 33–35.) The essential issues are whether material misrepresentations were made and relied upon by plaintiffs to their injury. These were clearly the issues in *Willow Creek*. Furthermore, in order to assert a claim of breach of the implied duty of good faith and fair dealing, bad faith on the part of the defendant must be shown. *See Reda v. Eastman Kodak Co.*, 233 A.D.2d 914, 649 N.Y.S.2d 555, 558 (1996). This is comparable to the issue of scienter in a securities fraud

action. Although defendants argue that they must also prove the existence of a contract, we fail to see how the actions are not integrally related.

Accordingly, if plaintiffs cannot prove the claims discussed *infra* Part III, the instant action will be barred on grounds of *res judicata*.

### III. *Release*

■ Because plaintiffs are within the definition of the Settlement Class, by failing to opt out they released "any and all claims, actions, or causes of action of whatever nature, character or description, whether known, unknown, suspected or unsuspected, which arise out of, or are in any way based on, connected with or related to the matters alleged in the Consolidated Complaint in this action." The wording of this release is typical of class actions. The Second Circuit has held that "in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir.1982); *see National Super Spuds*, 660 F.2d at 18 n. 7; *see also Robertson v. National Basketball Ass'n*, 622 F.2d 34, 35 (2d Cir.1980).

"Release is appropriate 'where there is a realistic identity of issues between the settled class action and the subsequent suit,' but only if class members have been properly notified of a settlement of their claims so that release of the claims is 'foreseeably obvious.'" *Feuerman*, 1996 WL 648966, at *6 (quoting *TBK Partners*, 675 F.2d at 461); *see In re VMS Sec. Litig. v. Stout*, No. 89 C 9448, 1997 WL 733924, at *3 (N.D.Ill. Nov.18, 1997) (holding that state law claims of common law fraud, misrepresentation and negligence were released by the following provision: "every asserted or potential claim that in any manner whatsoever relates to the purchase or sale of any securities of any of the Funds by any class member"). For ex-

ample, in *Mosberg v. National Prop. Analyst, Inc.*, 217 A.D.2d 482, 630 N.Y.S.2d 50 (1995), the plaintiff participated in a federal class action settlement by submitting a proof of claim and release form. *See id.* at 482, 630 N.Y.S.2d 50. The release in that case referred to all "actions, claims, causes of action ... whether in law or equity ... including Unknown Claims ..." that would arise from the facts that could have been alleged or reflected in the federal action. *Id.* at 483, 630 N.Y.S.2d 50. In a subsequent state suit brought by the plaintiff to enforce a put option, the Appellate Division, First Department held that the release executed in the class action extinguished the plaintiff's right to exercise his put option. *See id.* at ·483–85, 630 N.Y.S.2d 50. Although the plaintiff in that action actively participated in the settlement, it is obvious that the same principles of release apply here. Accordingly, on its face, this release acts as a bar to plaintiffs' contract claims.

However, this case presents unique facts. There is evidence that supports plaintiffs' claim that Candie's did not intend for the *Willow Creek* settlement to dispose of the instant claims. Such evidence includes the verbal agreement by Caruso and Cole in April 2000, prior to the June 2000 opt-out deadline, to stay any settlement discussions until after conclusion of the class action. Further, in May 2000, Caruso faxed a copy of a proposed settlement agreement to Cole, but was not informed that it was rejected until after the opt-out deadline had expired.

Candie's 10–Q Reports, filed for the periods ending April 30, 2000 and July 31, 2000, discussed the possibility of Caruso asserting an independent claim against defendants. This discussion was separate from the discussion of the class action. Indeed, it was separated by a paragraph discussing the SEC's investigation of defendants. Specifically, it stated:

> In connection with the Company's acquisition of Michael Caruso & Co., Inc. ("Caruso") in September 1998, the Company made certain representations and warranties concerning, among other things, its financial statements which could result in a claim being made by the former stockholders of Caruso against the Company. The Company is unable to determine the amount of liability, if any, which could arise if any claim were made by such stockholders.

(Caruso Decl. ¶ 11, Exs. B, C.)

Although Candie's argues that it was merely complying with SEC regulations by disclosing all possible known claims, the above paragraph causes concern. Prior to these filings, Candie's never disclosed a possible cause of action asserted by plaintiffs. We see no reason why Candie's would discuss plaintiffs' potential contract claims separately from the discussion of the class action if defendants expected the contract claims to be extinguished by settlement of the class action. Finally, the parties entered into a written tolling agreement after the proof of claim deadline had expired. This agreement was also extended in writing after the settlement fund was distributed on October 30, 2000.

Nonetheless, defendants argue that none of the above actions or conversations is relevant to the intent of the parties. It is well settled that "[w]here the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed.... The fact that they may have intended something else is irrelevant." *See Jerry's Gen. Contracting Serv., Inc. v. Republic of the Philippines*, No. 86 Civ. 3266, 1987 WL 16369, at *2 (S.D.N.Y. Aug.21, 1987) (citations omitted). However, the course of conduct is relevant when determining whether absent members should be bound by the settlement of a class action. *See W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 33 (2d Cir.1996). This may be proven by conduct after the release. Furthermore, if plaintiffs were induced by defendants' alleged inequitable conduct, defendants will be estopped from arguing basic contract principles.[7]

7. The Complaint in this action does not allege the above mentioned conduct. Accordingly, we grant plaintiffs leave to amend the Complaint within 20 days of the date of this Opinion and Order.

At this stage, we find unpersuasive defendants' argument that the tolling agreements should not impact our decision because they merely concern the applicable time limitations in which to bring a claim and not the defenses which may be asserted. However, if plaintiffs cannot prove their allegations of inequitable conduct or estoppel, the instant claims will be barred on grounds of release.

## CONCLUSION

For the above-stated reasons, defendants' motion for summary judgment is denied. Plaintiffs are permitted to conduct discovery as to whether their claims were intended to be included within the *Willow Creek* class action. They may inquire into the *Willow Creek* defendants' intent upon entering into the settlement agreement and whether plaintiffs themselves understood whether such claims would be released by the *Willow Creek* settlement. They may seek documents from and the deposition testimony of the class representatives, defendants and counsel.

However, plaintiffs are not entitled to conduct discovery with respect to whether they were adequately represented by the class representatives in *Willow Creek* or whether the Settlement Notice was sent to them. In accordance with this directive, they may not inquire into whether the class representatives were aware of plaintiffs' contract claims or whether they believed they were representing such interests when entering into the *Willow Creek* settlement agreement. Because they were not denied due process with respect to notice, they may not seek documents from and the deposition testimony of Michael Rosenbaum and his counsel. In the absence of any allegation of incompetent representation by the class representatives, discovery is not permitted as to their conduct during the class action. If future allegations are asserted in connection with such claim, it will be considered at such time.

Finally, we grant leave to plaintiffs to amend the Complaint within 20 days of the date of this Opinion and Order to conform the Complaint to the allegations asserted herein.

SO ORDERED.